FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

98 MAR 26 PM 4:53

U.S. DISTRICT COURT
N.D. OF ALABAMA

LINDA WILLINGHAM, as           )
Executrix of the Estate of    )
PAUL C. WILLINGHAM,            )
Deceased,                      )
                               )
          Plaintiff,           )
                               )
vs.                            )  Case No. CV 96-TMP-3273-NW
                               )
FORD MOTOR COMPANY, et al.,    )
                               )
          Defendants.          )

ENTERED

MAR 26 1998

### MEMORANDUM OPINION

This cause is before the court on the motion for summary judgment filed by defendant New Holland North American, Inc. on October 27, 1997. Because plaintiff conceded at oral argument of this motion that summary judgment is due to be granted as to Count Two of the complaint and as to claims for express warranties in Count Three, the court's discussion here will focus on the allegations of Count One and the assertions of implied warranty claims under Count Three.

### Background

The decedent Paul C. Willingham was fatally injured on May 17, 1996, when the Ford Model 2600 tractor he was operating apparently rolled over on him. The tractor was first purchased by

the decedent's father in 1976 and was not equipped with a rollover protective system (ROPS). At the time of the accident, the decedent had ethanol in his body, apparently from drinking an alcoholic beverage, although the precise level of alcohol intoxication and its effects on him are unclear and in dispute. Although the decedent was employed as a railroad engineer, he had been raised on a farm, around tractors, and had operated this particular tractor on several occasions. The tractor was actually owned by the decedent's mother, but, with her permission, had been brought to the decedent's home for use there. The rollover accident apparently occurred while the decedent was operating the tractor either on or along the top of a steep slope by the side of a roadway leading over a bridge and up to the decedent's home. Because no one witnessed the actual accident, the precise circumstances are unknown.[1]

---

[1] The undisputed evidence fails to show whether the decedent was operating the tractor along the face of the slope or on the roadway along the top of the slope. The difference may be critical. If, indeed, the decedent was operating the tractor on the face of the slope, the defendant's assertion of the defenses of assumption of the risk and contributory negligence take on great merit. On the other hand, if the decedent was operating the tractor on the roadway along the top of the slope and his left rear wheel slipped down the slope, dragging the tractor with it, the decedent appears to be less guilty, and perhaps not guilty at all, of assumption of the risk and contributory negligence.

## Claims Presented

Plaintiff's first amended complaint filed June 6, 1997, states claims in three counts. Count One seems to assert claims under the Alabama Extended Manufacturer's Liability Doctrine and for the negligent or wanton design or manufacture of the tractor. Count One, therefore, mixes the distinct legal theories of products liability under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD) and traditional common-law negligence and wantonness.

Count Two of the complaint contends that the defendant was negligent or wanton in failing to warn and/or retrofit the tractor with a ROPS. Plaintiff had conceded, however, that defendant is entitled to summary judgment on this count.

Finally, Count Three of the complaint alleges that the defendant breached express and implied warranties with respect to the tractor, apparently pursuant to Alabama's version of the Uniform Commercial Code. Again, plaintiff concedes that claims based upon *express* warranties are due to go out on summary judgment inasmuch as there is no evidence before the court establishing the actual terms of this warranty. Plaintiff maintains, however, that her claims for breach of implied warranties of merchantability and fitness for a particular purpose remain valid.

### Count One - AEMLD and Negligence/Wantonness

At the outset, as noted above, the court believes that Count One of the first amended complaint adequately states causes of action under AEMLD and for common-law negligence. While Count One also attempts to state a claim for common-law wantonness, the court finds that the undisputed evidence fails to show such a degree of culpability on the part of the defendant necessary to support such a claim. To support a claim of wantonness, the plaintiff must show, by clear and convincing evidence, that the defendant "with reckless indifference to the consequences ... consciously and intentionally did some wrongful act or omitted some known duty and that the act or omission produced the injury." Pitt v. Century II, Inc., 631 So. 2d 235, 240 (Ala. 1993)(quoting Hamer v. Nelson, 516 So. 2d 1381 (Ala. 1987)). There simply is no evidence before the court suggesting that the defendant, in 1976, acted with reckless indifference to the consequences by intentionally producing and marketing tractors without ROPS. The defendant was not recklessly indifferent in that the owner's manual and other warnings contained in the materials delivered with the tractor expressly warned against operating it on slopes. Additionally, the evidence is undisputed that a ROPS was offered as optional equipment in 1976, thereby making available protective structures to consumers that were interested in them. Not all tractors were

4

operated under conditions necessitating the protection of a ROPS. Indeed, some tractors were operated under conditions in which a ROPS was useless or even counterproductive.[2] Because the defendant was not deliberately indifferent to the consequences of selling tractors without ROPS, it did not act wantonly and it is entitled to summary judgment on plaintiff's wantonness claim.

The focus of the issue surrounding plaintiff's claims under the Alabama Extended Manufacturer's Liability Doctrine and common-law negligence is whether plaintiff is barred from recovery under both theories because of the decedent's contributory negligence or assumption of the risk. As these are affirmative defenses that must be proven by the defendant, to be entitled to summary judgment, the defendant must show that there is no substantial evidence from which a reasonable jury could conclude that the decedent was <u>not</u> contributorily negligent and did <u>not</u> assume the risk of injury arising from the operation of the tractor. The court agrees with the plaintiff that there is evidence upon which a reasonable fact finder could so conclude and, therefore, there are genuine issues of material fact that preclude summary judgment on these claims.

---

[2]It must be recalled, as one of the plaintiff's own experts noted, that tractors with ROPS were not appropriate in all uses. For example, tractors used to clean chicken houses and to operate in orchards could <u>not</u> have ROPS because of the low ceiling and low-hanging branches in those work environments.

The defendant's arguments for both contributory negligence and assumption of the risk proceed on two grounds. First, defendant argues that the decedent knowingly operated the tractor on a very steep slope while aware that the tractor lacked a rollover protective system. Second, defendant points out that at the time he was operating the tractor, the decedent had ethanol in his blood apparently from drinking an alcoholic beverage. While there certainly is evidence upon which a jury could find that the decedent was, indeed, contributorily negligent or that he assumed the risk of his injuries in the manner in which he operated the tractor, the evidence is not so clear-cut as to <u>require</u> either of those findings as a matter of law. Viewing the evidence most favorably to the plaintiff and drawing all inferences in her favor, a reasonable jury might well conclude that the decedent did not intentionally operate the tractor on the steep slope. Rather, they could find from the evidence that he was driving the tractor on the roadway along the top of the slope when his left rear tire slipped over the edge of the slope inadvertently, causing the tractor to slide down the slope before turning over. Again, since there is no eyewitness to the accident, the jury's conclusion as to which of these alternative versions of the facts is believable necessarily turns upon their assessment of credibility and the sifting of circumstantial evidence.

6

A jury might also conclude that, despite the decedent's apparent consumption of alcohol before operating the tractor, the alcohol played no role in the causation of the accident. The blood-alcohol content of the decedent drawn from his body after his death was 0.07, which is below the limit at which Alabama law presumes the person to be intoxicated for purposes of driving an automobile on a public highway. While the defendant points out that the decedent had a higher BAC reading in his urine sample, both experts here agree that the actual numerical BAC reading in a urine sample is not reliable. Even though the presence of alcohol in a urine sample can confirm that the decedent had alcohol in his blood stream, the reading of 0.12 BAC in the urine sample cannot confirm that he had such a high _level_ of alcohol. A reasonable jury could conclude, therefore, that even though the decedent had drunk an alcoholic beverage before operating the tractor, it had not so impaired his ability to operate the tractor safely that it contributed to the accident.

In passing, the court notes, of course, that the plaintiff has marshaled sufficient evidence to create a genuine issue of fact whether the tractor was defective and unreasonably dangerous for purposes of a claim under the AEMLD and that it was negligently designed or manufactured without a ROPS. Because the focus of the motion for summary judgment on these claims is the

defendant's assertion that the decedent was contributorily negligent or that he assumed the risk of his injuries, and because the court concludes there are genuine issues of material fact on those defenses, the motion for summary judgment on plaintiff's AEMLD and negligence claims is due to be denied.

### Implied Warranties

Plaintiff also asserts claims arising under Alabama's version of the Uniform Commercial Code for alleged violations of an implied warranty of merchantability and an implied warranty of fitness for a particular purpose. Alabama Code § 7-2-314 specifically provides that all contracts for the sale of goods include an implied warranty of merchantability "if the seller is a merchant with respect to the goods of that kind."[3] To be merchantable, the goods sold must:

>   (a)   Pass without objection in the trade under the contract description; and...

---

[3] Although not raised as an issue by the parties, it is not entirely clear that the defendant New Holland North America is a "seller" within the meaning of this provision. While it is undisputed that the defendant was the manufacturer of the tractor at issue in this case, the term "seller" as it is used in this provision means "a person who sells or contracts to sell goods." Alabama Code § 7-2-103(1)d). None of the evidence presented in this case suggests that the tractor was sold directly from the defendant to an end user without the intervention of a dealer or retailer. In any event, because the parties have not raised this issue, the court will not consider it.

8

>    (c) Are fit for the ordinary purposes for
>    which such goods are used....

The Alabama courts have held that a claim asserting that a particular good sold is unreasonably dangerous does not state a cause of action for breach of the implied warranty of merchantability. See <u>Shell v. Union Oil Company</u>, 489 So. 2d 569 (Ala. 1986); <u>Armstead v. Kawasaki Heavy Industries, Inc.</u>, 658 So. 2d 437 (Ala. 1995); <u>Yarbrough v. Sears Roebuck and Company</u>, 628 So. 2d 478 (Ala. 1993). As the Alabama Supreme Court recently commented:

> The Yarbroughs' claim of a breach of the implied warranty of merchantability is to the effect that the kerosene heater was unreasonably dangerous and therefore could not be merchantable. "Such an argument ignores the clear distinction between causes of action arising under tort law and those arising under the UCC as adopted in Alabama." <u>Shell v. Union Oil Company</u>, 489 So. 2d 569, 571 (Ala. 1986). Whether the kerosene heater was unreasonably dangerous is not a question properly addressed in a claim alleging breach of warranty under the UCC, but it could be, and was, properly raised in a claim under the AEMLD.

<u>Yarbrough v. Sears Roebuck and Company</u>, 628 So. 2d 478, 483 (Ala. 1993). See also <u>Pitts v. Dow Chemical Company</u>, 859 F.Supp. 543, 545, n.1 (M.D. Ala. 1994).

Similarly, plaintiff cannot establish a claim for breach of an implied warranty of fitness for a particular purpose.

9

<u>Alabama Code</u> § 7-2-315 establishes such an implied warranty "where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying upon the seller's skill or judgment to select or furnish suitable goods...." There simply is no evidence before the court to meet any of a number of these requirements. First, it is unlikely that the defendant was the "seller" of the goods for purposes of the contract under which the end user (the decedent's father) obtained the tractor. But even if New Holland sold the tractor directly to the end consumer, there is no evidence that New Holland had "reason to know any particular purpose" to which the tractor was going to be put or that the buyer was "relying on the seller's skill or judgment to select or furnish" the tractor. None of the elements necessary for establishing an implied warranty of fitness for a particular purpose are supported by the evidence in this case.

   The defendant is entitled to summary judgment as to all of Count Three of the first amended complaint. As mentioned above, plaintiff concedes that she cannot prove the breach of an <u>express</u> warranty, and for the reasons discussed immediately above the evidence fails to show the existence of an implied warranty of merchantability or an implied warranty of fitness for a particular purpose. Under Alabama law, an implied warranty of merchantability

10

cannot be the basis of a claim where it is alleged merely that the product is unreasonably dangerous. Thus, the defendant's motion for summary judgment as to Count Three, involving both express and implied warranties, is due to be granted.

## Conclusion

To summarize, the court will grant the defendant's motion for summary judgment with respect to Counts Two and Three of the first amended complaint and with respect to the wantonness claim asserted in Count One of the amended complaint. The court will deny the motion for summary judgment as to the plaintiff's AEMLD and negligence claims asserted in Count One of the first amended complaint. An appropriate order will be entered separately.

DATED this 27th day of March, 1998.

T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE